Affirmed As Reformed and Memorandum Opinion filed April 26, 2011.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00552-CR

___________________

 

LEE MARTINEZ, JR., Appellant

 

V.

 

THE STATE OF TEXAS, Appellee



 



 

On
Appeal from the 178th District Court

Harris County,
Texas



Trial Court Cause No. 1254306

 



 

 

MEMORANDUM OPINION

A jury
convicted appellant of unauthorized use of a motor vehicle.  The trial court
sentenced appellant to confinement for one year in the State Jail Division of
the Texas Department of Criminal Justice.  Appellant filed a timely notice of
appeal.

Appellant raises three
issues on appeal.  First, appellant claims the evidence is legally and factually
insufficient to sustain his conviction.  The Texas Court of Criminal Appeals
recently determined that the Jackson v. Virginia[1] standard is the
only standard a reviewing court should apply to determine whether the evidence
is sufficient to support each element of a criminal offense the State is
required to prove beyond a reasonable doubt.  See Brooks v. State,
323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.).  Accordingly,
under current Texas law, in reviewing appellant’s issues we apply the Jackson
v. Virginia standard and do not separately refer to legal or factual
sufficiency.   

We view all of the
evidence in the light most favorable to the verdict to determine whether the
jury was rationally justified in finding guilt beyond a reasonable doubt.   Brooks,
323 S.W.3d at 902.  We do not sit as a thirteenth juror and may not substitute
our judgment for that of the fact finder by re-evaluating the weight and
credibility of the evidence.  Id. at 901; Dewberry v. State, 4
S.W.3d 735, 740 (Tex. Crim. App. 1999); see also Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986).  We defer to the fact finder’s
resolution of conflicting evidence unless the resolution is not rational.  Brooks,
323 S.W.3d at 907.  Our duty as a reviewing court is to ensure the evidence
presented actually supports a conclusion that the defendant committed the
crime.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  

The complainant, Joyner
Meza, was at home when his car was taken from his driveway.  Meza went outside
but the car was already in the street.  He did not see the driver and did not
know appellant.

Officer Ivan Santillanes
of the Pasadena Police Department was on patrol when he received a call
regarding an auto theft and heard a description of the vehicle.  He saw a
vehicle of that description, called in the license plate and received
confirmation that it was the stolen vehicle. Officer Santillanes began following
the car.  After the car slowed, Officer Santillanes turned on his lights.  The
car turned into a parking lot and the driver accelerated rapidly all the way
through the parking lot, crossed a street, and crashed into a parked vehicle at
a trailer park. Officer Santillanes observed the male driver exit the stolen
vehicle and run north.

The man ran between two
trailers and Officer Santillanes followed approximately 30 to 40 feet behind. 
The man ran past all the trailers and into a field.  When another officer approached
in front of him, the man began running back towards Officer Santillanes.  Officer
Santillanes ordered the man to stop and put up his hands.  The man went back
into the field and Officer Santillanes lost sight of him.  There were
approximately ten officers on the scene.  The trailer park was well-lit but
there was minimal light in the field.  Officer Santillanes said the man was a
young Hispanic with short hair.  Officer Santillanes did not get a good look at
his face and could not identify him.  

Officer Tang, a canine
officer with the Pasadena Police Department, arrived at the scene and was told
by Officer Santillanes that a suspect had been chased into the trailer park. 
Officer Tang proceeded to perform a track for the suspect with his canine
partner, Robby.  Officer Tang took Robby to the stolen vehicle and gave the
track command.  Robby “took off” towards the trailer park, in the direction
Officer Santillanes was pointing.  Robby’s posture indicated he was “on odor,”
meaning he was tracking the scent picked up from the vehicle.

Officer Tang and Robby, accompanied
by Officer Santillanes, proceeded between two trailers, across an open field,
across a street, and into an area where there were a tire business and an auto
business.  They proceeded between the two businesses into another small open
field.  About halfway into the field, Robby turned south.  Robby rounded the
corner of the tire business where there were weeds and tall grass.  As they
moved toward that area, Officer Tang saw two hands rise out of the grass and
the suspect said, “Stop, stop.”  Officer Tang identified appellant as the
person who rose up and had been tracked by Robby.  Appellant was found
approximately 300 to 400 yards from the stolen vehicle.  No one else was found
in the field where appellant was located.

Officer Tang testified
that, based upon his training and experience, in his opinion Robby properly
obtained a scent from the vehicle and that scent is what led them to where
appellant was hiding behind the tire business.  Robby is trained to detect
odors of narcotics as well as people, and can detect the scent of marijuana. 
Officer Tang testified the command to find narcotics differs from the command
to find people.  Based on his experience with Robby, Officer Tang can tell the
difference in Robby’s behavior and posture when he is searching for narcotics
as opposed to people.  

Officer Santillanes took
appellant into custody.  Appellant appeared to be under the influence of
marijuana; his eyes were red and glassy and there was a strong odor of
marijuana.

Appellant denied
stealing the vehicle and said he had been at the home of a friend, John, eating
pizza and smoking marijuana with John and John’s girlfriend, Ashley.  Appellant
testified that he remained at John’s until he started walking home, about an
hour’s walk, at approximately 1:40 p.m.  When he got to the tire business, he
went behind the building to rest and smoke more marijuana.  He saw lights from
police cars and then a flashlight.  He let his presence be known and put his
hands up.  When he was told to get on the ground and put his hands behind his
back, appellant told Officer Santillanes there was a misunderstanding, he had
been there and was resting.  Appellant did not see anyone else in the area
running from the police.  Officer
Santillanes took appellant to John’s house but John was not there.  Officer
Santillanes spoke to John’s mother but no one at John’s home had seen appellant
earlier that day.  Appellant testified he was arrested wearing blue jean pants,
a white t-shirt, a black t-shirt on top of it, and a white sweater, with black
and white tennis shoes.  

At trial, Officer
Santillanes testified the man was wearing blue pants and a black shirt.  He
admitted that initially he thought the pants were shorts but realized his
mistake after the dog tracked to the suspect.  The offense report states the
suspect was wearing shorts.  After appellant was taken to the jail, he was
contacted by Officer Robert Garcia of the Pasadena Police Department. 
According to Officer Garcia, appellant was wearing a black shirt and blue
shorts.

            Based
solely upon Officer Santillanes’ report that the suspect was wearing shorts,
not pants, appellant claims Officer Santillanes was “highly unreliable as an
eyewitness.” Appellant does not address Officer
Garcia’s testimony that he also believed appellant was wearing shorts.  Officer
Santillanes saw the driver exit the vehicle and followed him into the field.  It
was the undisputed testimony of Officer Tang that he and Robby tracked the
driver from the vehicle to appellant’s location.  No one, including appellant,
testified to the presence of another person in the field.  There was no dispute
that appellant was the person found by Officer Tang and Robby.  The only
evidence contrary to the verdict was appellant’s testimony that he was not the
driver of the vehicle.  No evidence was offered in support of appellant’s
alibi.  

Considering all the
evidence in the light most favorable to the verdict, and giving deference to
the jury’s determination of credibility and conflicts in the evidence, we hold a
rational jury could find all of the elements of the offense beyond a reasonable
doubt.  See Brooks, 323 S.W.3d at 899.  Accordingly, the evidence
is sufficient to sustain appellant’s conviction and issue one is overruled.           

Appellant’s second issue
claims the trial court erred in overruling appellant’s motion for instructed
verdict because the evidence was insufficient to sustain his conviction. 
Having found otherwise, we find the trial court did not err in denying the
motion.  Issue two is overruled.

In his third issue
appellant requests we order the judgment be reformed to reflect punishment was
assessed by the trial court, not the jury.  The record reflects the trial court
determined appellant’s sentence.  However, the judgment incorrectly reflects
the jury assessed punishment.  An appellate court has the power to correct and
reform a trial court judgment to make the record speak the truth when it has
the necessary data and information to do so.  See Nolan v. State, 39
S.W.3d 697, 698 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (citing Asberry
v. State, 813 S.W.2d 526, 529 (Tex.App.-Dallas 1991, pet. ref'd)); see
also Tex. R. App. P. 43.2(b).  Accordingly, we sustain appellant’s third
issue and reform the judgment of conviction to reflect punishment was assessed
by the trial court.

As reformed, the
judgment is affirmed.

                                                                                    PER
CURIAM

 

 

 

Panel consists of Justices
Brown, Boyce, and Jamison.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1] 443 U.S. 307, 99 S. Ct.
2781, 61 L.Ed.2d 560 (1979).